UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| COVIL CORPORATION By Its Duly Appointed Receiver, Peter D. Protopapas,<br><br>        Plaintiff,<br><br>vs.<br><br>PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY; SAM J. CRAIN & CO., INC.; and SOUTH CAROLINA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCATION,<br><br>        Defendants. | Civil Action No. 3:20-1979-BHH<br><br>**OPINION AND ORDER** |

  This matter is before the Court on several motions including Pennsylvania National Mutual Casualty Insurance Company's ("Penn National") request that the Court disregard the citizenship of certain Co-Defendants under the doctrines of nominal and fraudulent joinder (ECF No. 1 at 4–13) and motion in the alternative to realign the Co-Defendants as plaintiffs (ECF No. 5), as well as Covil Corporation's ("Covil") motion to remand (ECF No. 21). For the reasons set forth in this Order, Penn National's motions are denied, and Covil's motion to remand is granted.

## BACKGROUND

  Covil was an installer of thermal insulation materials from 1954 through 1991. Covil's operations allegedly exposed numerous persons to asbestos who thereby suffered bodily injury. The alleged bodily injury has given rise to dozens of claims and tort suits against Covil ("Underlying Asbestos Suits"), in which asbestos claimants seek to

1

recover from Covil for their bodily injuries.

Covil alleges that during times relevant to the complaint, Sam J. Crain & Co., Inc. ("Crain Agency") served as Covil's insurance broker. Covil contends that based on the Crain Agency's advice about Covil's business insurance needs, from 1986 to 1988, it purchased insurance from Penn National ("Penn National policies"). Covil further contends that Mission Insurance Company ("Mission") issued umbrella coverage to Covil from at least 1986 to 1987 (the "Mission policy"). Covil has experienced losses related to the Underlying Asbestos Suits that it asserts trigger coverage under the Mission policy, which purportedly has a liability limit of $5,000,000. (Compl. ¶ 10, ECF No. 1-1.) Mission was liquidated on September 12, 1987, and the Mission policy is missing. (*Id.* ¶¶ 10–11.) Covil alleges that the South Carolina Property and Casualty Insurance Guaranty Association ("Guaranty Association"), which was statutorily created to protect the policyholders of insolvent insurance companies, steps into the shoes of Mission to the extent of its obligation on covered claims arising from the Underlying Asbestos Suits. (*See id.* ¶ 12.)

The Honorable Jean H. Toal (Chief Justice Ret.) ("Justice Toal") is presiding over many of the Underlying Asbestos Suits in a consolidated asbestos docket in South Carolina state court ("Receivership Court"). Justice Toal appointed Peter D. Protopapas, pursuant to South Carolina Code § 15-65-10, as Receiver for Covil ("Receiver") on November 2, 2018. The order of appointment vested the Receiver with the power and authority to fully administer all assets of Covil, including the right and obligation to administer any insurance assets. The Receiver is acting on behalf of Covil, managing the defense of the Underlying Asbestos Suits as well as numerous declaratory judgment

2

actions related to Covil's historical insurance coverage.

Covil filed this action in the Court of Common Pleas, Richland County, South Carolina on April 27, 2020 against Penn National, the Crain Agency, and the Guaranty Association. The complaint asserts four causes of action for declaratory judgments against Penn National and the Guaranty Association as to the Penn National and Mission policies, and two causes of action against the Crain Agency for failure to procure insurance and breach of contract. (*Id.* ¶¶ 14–36.) Covil's claims for relief arise under South Carolina law. It is uncontested that the Crain Agency and the Guarantee Association (collectively "non-diverse Defendants") are both citizens of South Carolina. (*See* Notice of Removal ¶¶ 4–5, ECF No. 1.) Covil is likewise a citizen of South Carolina. (Compl. ¶ 1.)

On May 22, 2020, Penn National removed this case to federal court alleging diversity jurisdiction under 28 U.S.C. § 1332, notwithstanding the presence of the non-diverse Defendants. According to Penn National, the citizenship of the two non-diverse Defendants should be ignored under the doctrines of fraudulent and nominal joinder. (Notice of Removal ¶¶ 14–18.) In the Notice of Removal, Penn National references three other cases that were, at the time, pending before this Court and in which, Penn National avers, Covil made "similar attempts to divest the federal district courts of jurisdiction." (*Id.* ¶ 14.) Subsequently, in two of those cases the Court denied insurer defendants' motions to dismiss for fraudulent or nominal joinder and to realign the parties, and remanded the cases to the Receivership Court. *See Finch v. Sentry Cas. Co. et al.*, No. 3:19-cv-1827-BHH (D.S.C.), ECF No. 55; *Protopapas v. Wall Templeton & Haldrup PA, et al.*, No. 3:19-cv-01635-BHH (D.S.C.), ECF No. 63.

At the time Covil filed its motion to remand, Penn National and the Guaranty Association had been served. (*See* ECF No. 1-1 at 18–19.) Covil's efforts to serve the Crain Agency were ongoing and Covil sought to serve the Crain Agency by certified mail. (*See id.* at 20–26; Mot. for Service, ECF No. 8.) The Court later stayed all deadlines in the case pending resolution of the motion to remand. (ECF No. 30.) Penn National did not obtain the consent of the Guaranty Association prior to removing the case, *see* 28 U.S.C. § 1446(b)(2)(A) (requiring the consent of all properly joined and served defendants), and the Guaranty Association does not consent to removal (*see* ECF No. 27 at 1–2).

The motion in the alternative to realign Co-Defendants (ECF No. 5), motion to serve the Crain Agency by certified mail (ECF No. 8), and motion to remand (ECF No. 21) have all been fully briefed. These matters are ripe for disposition and the Court now issues the following ruling.

## **LEGAL STANDARD**

**Removal and Diversity Jurisdiction**

"'To be removable to federal court under 28 U.S.C. § 1441 a state action must be within the original jurisdiction of the district court, *and its jurisdiction must be ascertainable from the face of the complaint*.'" *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985) (emphasis in original) (quoting *Hunter Douglas, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 159*, 714 F.2d 342, 345 (4th Cir. 1983)). As courts of limited jurisdiction, federal courts "'are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated,' and 'if federal jurisdiction is doubtful, a remand to state court is necessary.'" *Palisades Collections LLC v. Shorts*, 552 F.3d 327,

333–34 (4th Cir. 2008) (quoting *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005)); see also *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) ("Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction."). Courts must strictly construe the removal statute and "resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993).

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chems. Co. Inc.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). A defendant may remove an action from state court to federal court if a federal question is presented under 28 U.S.C. § 1331 or if there is diversity jurisdiction under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Federal diversity jurisdiction is present when the amount in controversy exceeds $75,000 and there is "complete diversity: In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil*, 545 U.S. at 553. The removal statute "bars removal on the basis of diversity if any 'part[y] in interest properly joined and served as [a] defendan[t] is a citizen of the State in which [the] action is brought.'" *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (alterations in original) (quoting 28 U.S.C. § 1441(b)). The existence of diversity jurisdiction "is typically determined from the face of the plaintiff's well-pled complaint," and if non-diverse defendants are properly joined, then remand is required. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2:14-MN-02502-

RMG, 2016 WL 7339811, at *1 (D.S.C. Oct. 24, 2016) (citation and quotation marks omitted).

**Fraudulent and Nominal Joinder**

"[T]he fraudulent joinder doctrine 'effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "'The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor.'" *Id.* (quoting *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir.1999)). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424 (citation omitted). "The removing party must show either 'outright fraud in the plaintiff's pleading of jurisdictional facts or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Johnson*, 781 F.3d at 704 (emphasis in original) (quoting *Hartley,* 187 F.3d at 424). "[I]n determining 'whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available.'" *Mayes*, 198 F.3d at 464 (quoting *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)).

The U.S. Supreme Court has interpreted the removal statutes "to require all defendants in a case to join in or consent to removal, creating the so-called 'rule of

unanimity.'" *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259 (4th Cir. 2013). This rule is consistent with the obligation of the federal courts "'to construe removal jurisdiction strictly because of the significant federalism concerns implicated.'" *Id.* (quoting *Md. Stadium Auth.*, 407 F.3d at 260). However, courts recognize an exception to this rule, under which "a nominal party need not consent to removal." *Id.* (citing Charles Alan Wright et al., 14C Fed. Prac. & Proc. Juris. § 3730 (4th ed. 2009)). "This 'nominal party exception' ensures that only those parties with a palpable interest in the outcome of a case, and not those without any real stake, determine whether a federal court can hear a case." *Id.* (citation omitted). Even so, a district court considering such an exception to the rules of removal should do so remembering that it "is not inherently bad faith to use strategy to defeat federal jurisdiction." *Brazell v. Gen. Motors, LLC*, No. 6:14-CV-4588-TMC, 2015 WL 1486932, at *4 (D.S.C. Mar. 30, 2015) (citations omitted). "It is well settled federal law in the removal area that the plaintiff is the master of his complaint." *Id.* (citing *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005)).

**Realignment of Parties**

The U.S. Supreme Court held in *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941), that:

> Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute. . . . Whether the necessary collision of interest exists, is therefore not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute.

(internal citations and quotation marks omitted). "For the purpose of removal, the federal law determines who is plaintiff and who is defendant." *Chicago, R.I. & P.R. Co. v. Stude*,

7

346 U.S. 574, 580 (1954).

The U.S. Court of Appeals for the Fourth Circuit has adopted the "principal purpose" test in deciding how to properly align parties. *See United States Fid. and Guar. Co. v. A & S Mfg. Co.* ("*A & S Mfg. Co.*"), 48 F.3d 131, 133 (4th Cir. 1995). Applying the "principal purpose" test entails two steps: "First, the court must determine the primary issue in the controversy. Next, the court should align the parties according to their positions with respect to the primary issue." *Id.* If the court determines that the parties should be realigned based on the "principal purpose" test, then the court must determine whether complete diversity exists based on that realignment. *Id.*

## DISCUSSION

### A. Fraudulent and Nominal Joinder

Penn National argues that Covil has fraudulently joined the Crain Agency and Guarantee Association in an attempt to avoid federal jurisdiction over the coverage dispute between Covil and Penn National. Specifically, Penn National asserts that the claims against the Crain Agency are barred by the statute of limitations, that the claims against the Guarantee Association are barred by the statutes governing and defining the Association's duties, and that Covil's claims against both Defendants are premature and nonjusticiable because they are contingent upon the outcomes of the instant coverage suit against Penn National and of other coverage litigation concerning Covil's insurance. (*See* ECF No. 28.) In making these assertions, Penn National bears a "heavy burden" and "must show that [Covil] cannot establish a claim even after resolving all issues of law and fact in [Covil's] favor." *Johnson*, 781 F.3d at 704. The Court finds that Penn National cannot satisfy this standard, which is even more favorable to Covil than the standard for

8

a Rule 12(b)(6) motion to dismiss, *Hartley*, 187 F.3d at 424, and Penn National's request for the Court to ignore the citizenship of the non-diverse Defendants will be denied.

Penn National does not assert that the non-diverse Defendants were joined as a matter of outright fraud, so it must instead satisfy the standard that there is no possibility or "glimmer of hope" that Covil's claims against the non-diverse Defendants could succeed. *Id.* at 426 (stating that a plaintiff seeking to defeat removal need only show "a slight possibility of a right to relief," and "[o]nce the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends"). With respect to the Guaranty Association, Penn National argues Covil's claims fail because the Association is only "obligated to the extent of claims existing before the determination of [Mission's] insolvency and claims arising up to the earliest of the following dates: (i) thirty days after the determination of insolvency; (ii) the policy expiration date; or (iii) the date the insured replaces or cancels the policy." *See* S.C. Code § 38-31-60(a). Mission was liquidated on September 12, 1987. Penn National asserts that none of the Underlying Asbestos Suits were pending or arose during the time periods for which the Guarantee Association's organic statute provides the Association could become liable on Mission's behalf.

However, Covil cites authority for the proposition that an asbestos plaintiff's claims arise at the time of exposure to the injurious product, not when the injury manifests. (*See* ECF No. 31 at 8 (citing *In re W.R. Grace & Co.*, 476 B.R. 114, 118 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013) ("In the context of asbestos litigation . . . a plaintiff's claim arises at the time when he was first exposed to the asbestos-laden product."); *Murphy v. Owens-Corning Fiberglas Corp.*, 590 S.E.2d 479, 482 (S.C. 2003) (finding, in the case of a latent disease tort action brought by nonresident

9

plaintiff against foreign corporation, that the legal wrong occurred at the time of alleged exposure to asbestos, so the claim "arose" in South Carolina for purposes of the Door Closing Statute even though injury did not manifest until plaintiff left the State)).) Covil alleges in the complaint that it "has experienced losses that 'trigger' the Mission policy" and seeks relief related to "asbestos suits alleging bodily injury during the Penn National and Mission policy periods." (Compl. ¶ 10 & p. 11.) Thus, Covil has a colorable claim that the injuries presented in the Underlying Asbestos Suits "arose" during the time periods itemized in S.C. Code § 38-31-60(a), which could potentially obligate the Guarantee Association to stand in the shoes of Mission with respect to the portion of Covil's losses that allegedly trigger the Mission policy. Resolving all issues of law and fact in Covil's favor, the Court cannot find that the complaint presents no "glimmer of hope" as against the Guarantee Association. The Association conceded as much in its response in support of remand. (*See* ECF No. 27 at 2 ("The Guarantee Association certainly believes Plaintiff's claims should fail for a number of reasons, and perhaps should be dismissed early in the discovery process. However, it cannot in good faith say that Plaintiff has no possibility for success on its claims at this point.").) Accordingly, Penn National cannot satisfy its burden to show that the South Carolina citizenship of the Guarantee Association should be ignored due to fraudulent joinder.

With regard to the Crain Agency, Penn National argues that Covil's claims are time-barred because Covil received the Penn National policies upon which Covil bases its claims at or around the time those policies were issued in 1986 and 1987, and had a duty to read and inform itself of their contents. Penn National asserts that Covil should have understood the gap in its insurance for which it now tries to blame the Crain Agency

10

by reading the plain language of the exclusion titled "EXCLUSION Completed Operation Hazard and Products Hazard." (ECF No. 28 at 12.) Penn National notes that actions for failure to procure insurance and breach of contract are governed by a three-year limitation period under South Carolina law. (ECF No. 28 at 10 (citing S.C. Code § 15-3-530(1).) Penn National contends that Covil was reasonably on notice of the Crain Agency's alleged failure to procure products-completed operations coverage in breach of contract at the time the policies were issued, and Covil's claims therefore expired, at the latest, in 1990, unless the statute of limitations is tolled.

Covil asserts that its claims against the Crain Agency are timely pursuant to the discovery rule and Penn National cannot meet its heavy burden to show fraudulent joinder because it cannot show that the statute of limitations bars Covil's claims as a matter of law. "Under the discovery rule, the limitations period commences when the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some claim against another party might exist." *Stokes-Craven Holding Corp. v. Robinson*, 787 S.E.2d 485, 489 (S.C. 2016) (citation omitted). District courts in this Circuit have noted that a removing party "may meet its burden under the fraudulent joinder doctrine by demonstrating that the statute of limitations for the plaintiff's action against a particular defendant has *clearly run*." *E.g.*, *Fitzpatrick v. Dufford*, No. 5:05-CV-128, 2006 WL 839513, at *3 (N.D.W. Va. Mar. 28, 2006) (emphasis added). However, "where the statute of limitations issue is dependent on disputed issues of fact, fraudulent joinder should not be applied." *Id.*

The Court finds that Covil's claims against the Crain Agency are not "clearly" barred by the expiration of the limitations period and numerous factual determinations

11

would need to be made before every "slight possibility" of relief as against the Crain Agency could be ruled out. *See Hartley*, 187 F.3d at 426. For one thing, even if it is shown that Covil received and read, or should have read, a copy of the Penn National policies in the 1980s, reliance by Covil on contemporaneous representations made by the Crain Agency as to the scope of coverage could affect tolling of the statute of limitations. For another, courts have held that a claim for professional negligence does not accrue for purposes of the statute of limitations until the plaintiff is actually damaged by the negligence. *See, e.g., Stokes-Craven*, 787 S.E.2d at 489 (applying discovery rule to legal malpractice claim). In other words, the Court would need to make factual and legal determinations in Penn National's favor in order to find that the statute of limitations precluded Covil's claims against the Crain Agency, and the Court cannot do so under the deferential standard applicable to assertions of fraudulent joinder. *See Starr Davis, Inc. v. Hartford Accident & Indem. Co.*, No. 3:19-cv-3481-JFA, ECF No. 43 at 9 (D.S.C. Jan. 30, 2020) ("Because this Court is required to resolve all issues of law and fact in favor of [the plaintiff insured] however, it cannot be said that the allegations in the Complaint fail to offer [plaintiff] even a slight possibility of a right to relief.") Thus, the Court finds that Penn National has not sustained its burden to show that the Crain Agency was fraudulently joined.

With respect to the justiciability of Covil's claims against the Crain Agency and the Guarantee Association, Penn National argues the claims are premature because they are contingent upon the outcomes of future events—namely, the results of Covil's claims against Penn National and other coverage litigation regarding Covil's insurance. (ECF No. 28 at 5–10.) Penn National contends that Covil's primary position in the case is that

the Penn National policies do in fact provide the very coverage that it simultaneously claims the Crain Agency failed to procure, and that Covil's claims against the Agency are thus impermissibly contingent. (*Id.*) As to the Guarantee Association, Penn National asserts that Covil's claims are not ripe because Covil has not "first exhaust[ed] all coverage and limits" provided by any other available insurance. (*Id.* at 15–20 (citing S.C. Code § 38-31-100(1).)

The Court finds that Covil's claims against both the Crain Agency and the Guarantee Association are ripe, and Penn National's assertions of fraudulent joinder on this basis are unavailing. Regarding the contingent nature of Covil's claims against the Crain Agency, "As a simple matter of efficiency and judicial economy, . . . parties should be joined to the same action where, as here, the core issue(s) of liability are the same for [those] parties." *Beaufort Cty. Sch. Dist. v. United Nat. Ins. Co.*, 519 F. Supp. 2d 609, 614 (D.S.C. 2007) (finding joinder was proper because "under the liberal pleading standards of fraudulent joinder, [defendant insurer] has fallen far short of meeting its heavy burden of showing that there is 'no possibility' that [plaintiff school district] could establish a cause of action against [South Carolina School Boards Insurance Trust]"); *see also* Fed. R. Civ. P. 20(b)(2)(A) (providing defendants may be joined in an action if "any right to relief is asserted against them jointly, severally, *or in the alternative* with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" (emphasis added)). Similarly, regarding the ripeness of Covil's claims against the Guarantee Association, it is precisely because the claims against the Association are interrelated with the claims against Penn National that they should be adjudicated together. *See Beaufort Cty. Sch. Dist.*, 519 F. Supp. 2d at 614 (D.S.C. 2007) (stating that defendant

13

insurer's position that plaintiff school board should not be allowed to join school board insurance trust to declaratory judgment action based on an alleged lack of ripeness contravened the essential purpose of the joinder rule, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits) (citing *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir.1983)). Moreover, to accept Penn National's arguments that Covil's claims against the Guaranty Association are barred under S.C. Code § 38-31-100(1) for a lack of exhaustion of coverage, would impermissibly require the Court to descend into the merits of Covil's claims and make legal and factual determinations in Penn National's favor. Accordingly, Penn National has not shown that the non-diverse Defendants were fraudulent joined by way of nonjusticiable claims.

Under the circumstances at issue in this case, the inquiry as to whether the Crain Agency and the Guarantee Association are nominal parties merges with the fraudulent joinder inquiry. The Court has already determined that the non-diverse Defendant's were properly joined, and the Guarantee Association (the one of the two to have been served thus far) does not consent to removal. *See Hartford Fire Ins. Co.*, 736 F.3d at 259 (stating properly joined defendants' unanimous consent to removal is required). Both non-diverse Defendants have a palpable interest in the outcome of this case and Penn National's request that the Court ignore their South Carolina citizenship for purposes of diversity jurisdiction is denied.

### B. Realignment of Parties

In the alternative to its request for the Court to disregard the citizenship of the non-diverse Defendants as fraudulently joined, Penn National moves to realign the non-

diverse Defendants as plaintiffs. (ECF No. 5.) Given the Court's finding that the Crain Agency and Guarantee Association were not fraudulently joined, the Court must next determine if the non-diverse Defendants should be realigned in such a manner that complete diversity would be present.

In applying the "principal purpose" test, Penn National argues the parties should be realigned because:

> (1) the principal issue in this action is whether Defendant Penn National (as the primary insurer) has coverage for the underlying asbestos lawsuits asserted against Plaintiff Covil; and (2) the Non-Diverse Defendants' principal interest is the same as Plaintiff Covil's principal purpose for this action—to establish coverage under the Penn National Policy.

(ECF No. 5-1 at 4.) Covil argues that the principal purpose is to determine

> which of these three defendants bears responsibility for the liabilities of Covil in connection with the Penn National and Mission policies. To resolve that issue, Covil seeks declarations regarding the terms, including applicable limits, of the Penn National and Mission insurance policies available to cover its liabilities. Covil also seeks monetary damages from the Crain Agency based on its failure to procure appropriate insurance and its breach of contract. Although the defendants may have interests adverse to one another on some issues, each is squarely adverse to Covil on the principal issue of liability.

(ECF No. 11 at 4.)

Ordinarily, a district court "will not interfere with the consequences of a plaintiff's selection in naming parties, unless the plaintiff has impermissibly manufactured diversity or used an unacceptable device to defeat diversity." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 93 (2005) (discussing joinder of additional parties) (citation and quotation marks omitted). The Court finds that Covil has not impermissibly manufactured diversity in this case. Rather, Covil has named two South Carolina Defendants who share a general interest with Penn National in opposing Covil's recovery. While it is true that the Crain

15

Agency may try to avoid liability for failure to procure coverage by arguing that full coverage existed under the Penn National and Mission policies, the Agency might also advance theories that do not support liability for Penn National—for example, that the Agency breached no duty to Covil even under Penn National's interpretation on coverage limits, or that the Agency owed Covil no duty to procure coverage at the level Covil claims. Moreover, the Guarantee Association's interests, like Penn National's interests, are squarely adverse to Covil on the issue of liability for coverage. The Court concludes that Penn National's formulation of the principal purpose of this suit is too narrow, and that Covil's statement of the principal purpose accurately describes the reality of the non-diverse Defendants' interests as being more closely aligned with Penn National than with Covil. *See Beaufort Cty. Sch. Dist.*, 519 F. Supp. 2d at 616 (noting that in *A & S Mfg. Co.*, the Fourth Circuit upheld the district court's decision to align all insurers on one side and the insured on the other, "because the primary issue in the case was the issue of liability. The various insurers had numerous possible disputes among themselves regarding contribution, but the district court properly held that this was a secondary issue that should not lead to realignment of the parties." (citations omitted)); *Starr Davis,* No. 3:19-cv-3481-JFA, ECF No. 43 at 11–13 (denying motion to realign in asbestos-related coverage dispute where defendant insurer claimed co-defendant insurance broker should be realigned as a plaintiff because broker would try to avoid liability by arguing for the existence of coverage under the policies it procured). Accordingly, the Court finds that the Crain Agency and the Guarantee Association are correctly aligned as defendants adverse to Covil, and because the non-diverse Defendants share a common state of citizenship with Covil, complete diversity does not exist.

### C. Remand

Covil's motion to remand is premised upon the assertion that complete diversity does not exist among the parties and that Penn National's attempt to realign the parties improperly manufactures diversity where none exists. (*See generally* ECF No. 21-1.) The Court's prior findings regarding fraudulent and nominal joinder, and the proposed realignment of parties, establish that complete diversity does not exist and remand is required. *See In re Lipitor*, 2016 WL 7339811, at *7 (remanding for lack of complete diversity).

## **CONCLUSION**

For the reasons stated above, Defendant Penn National's request that the Court disregard the South Carolina citizenship of the Crain Agency and Guarantee Association under the doctrines of nominal and fraudulent joinder (ECF No. 1 at 4–13) and motion in the alternative to realign the non-diverse Defendants as plaintiffs (ECF No. 5) are DENIED. Plaintiff Covil's motion to remand (ECF No. 21) is GRANTED. Covil's motion to serve the Crain Agency by certified mail (ECF No. 8) is DENIED as moot.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

March 30, 2021
Greenville, South Carolina